Swayne, Swayne & Hayes, for Defendants.

---

(Lucas Co., O., Court of Common Pleas.)

## JOHN F. WICHMAN v. THE FORT ORANGE OIL COMPANY.

*Construction of Oil and Gas lease*—Lease providing for the successive drilling of four wells within specified times, and then proceeding that for each location when made, the lessee should pay $150, held: the location money is to be paid not only for the four wells expressly provided for. but for every well drilled beyond that number.

---

PRATT, J.

### Statement.

#### I.

The petition was filed by John F. Wichman against The Fort Orange Oil Company, alleging that on the 23d day of January, 1893, a lease was made by him of a certain ninety acres of land, by which he granted to John H. Wichman, his heirs and assigns, all the oil and gas in and under certain premises described in the petition, except. ing and reserving one-sixth of all that should be produced. It is alleged that this lease had been assigned to the defendant company; that it had drilled ten oil-producing wells upon the premises and that by the terms of

the lease it was bound to pay the plaintiff $150 for each of said wells at the time of the location of each; that the defendant refuses to pay any part of said location money, and asking a judgment for $150 against the defendant company. A copy of the lease is attached to and made a part of the petition, and reads as follows:

### Exhibit A.

"In consideration of the sum of one dollar, the receipt of which "is hereby acknowledged, John F. Wichman of Sandusky county, Ohio, first party, hereby grants unto John H. Wichman, second party, its successors and assigns all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purposes of drilling and operating for oil, gas or water, to erect and maintain all buildings and structures, and lay all pipes necessary for the production and transportation of oil, gas or water, taken from the said premises, excepting and reserving however, to first party the one-sixth ($\frac{1}{6}$) part of all oil produced and saved from said premises, to be delivered in the pipe-line with which second party may connect its wells, namely, all that certain lot of land situated in the township of Madison, county of Sandusky, in the state of Ohio, bounded and described as follows, to-wit: Being thirty (30) acres off from the East side of the South-west quarter of section number ten (10,) also the West half($\frac{1}{2}$) of the South-east corner of the last above described tract. Said twenty (20) acres extending 55 rods East and West, and fifty-eight and two-elevenths rods North and South, the piece covered by this lease containing ninety (90) acres, more or less.

"To have and to hold the above premises on the following conditions: If gas only is found, second party agrees to pay $300 each year for the product of each well, while the same is being used off the premises, and the first party to have gas free of cost to heat all stoves in dwelling house during the same time.

"Whenever first party shall request it, second party shall bury all oil and gas lines below plow depth, and pay all damages done to growing crops by reason of burying and removing said pipe lines.

"No well shall be drilled nearer than 300 feet to the house or barn on said premises, and no well shall occupy more than one acre.

"In case no well is completed within 60 days from this date, then this grant shall become null and void.

"The second party shall have the right to use sufficient gas, oil or water to run all necessary machinery for operating said wells, and also the right to remove all its property, at any time. A second well to be drilled within four months, a third well within eight months, and a fourth well within twelve months from date of lease, second party to pay one hundred and fifty dollars ($150) for each location when the location is made, wells to be located by both parties.

If wells are not drilled as stated, second party only to hold fifteen acres for each well so drilled. Second party is also to protect the lines, steam lines to be laid North, South, East and West.

"It is understood between the parties to this agreement, that all conditions between the parties hereto shall extend to their heirs, executors and assigns.

"In witness whereof, the parties hereto have hereunto set their hands and seals this 23rd day of February, A. D., 1893.

"Signed, sealed and delivered in the presence of

"I. P. Wolcott, (Signed)    J. F. Wichman.
"J. L. Hart.              J. H. Wichman."

The defendant, by its answer, admits the execution and assignment of the lease, and alleges by way of defense, that the assignment came through other parties to the defendant; that these preceding assignees had, before the assignment to the defendant, drilled four wells and had paid therefor in full of all demands under the lease or location money.

To this the plaintiff replies, admitting that the intermediate assignees had drilled and paid the location money for the wells named, but alleging that such wells were not the ones for which this suit was brought.

A jury being waived, the case has been submitted to the court upon an Agreed Statement of Facts and certain written evidence and oral testimony.

By the Agreed Statement of Facts it appears that the defendant, since the assignment to it, had located and drilled upon the premises in question, nine wells; one of which was a non-producer of oil; three of which were light wells and had been operated but a short time, and five of which were regularly operated producing wells; and that it had also cleaned out and operated one previously drilled producing well.

The original lease and a line of assignments from John H. Wichman, lessee, down to the defendant, through intermediate assignees, are in evidence.

The oral testimony aside from identification and proof of signatures on these papers, relates substantially to the question as to who located the wells; whether the plaintiff had taken part in, or knew of their location, and whether any demand had been made by the plaintiff upon the defendant company, for any of the wells drilled by defendant company.

### II.

Upon these pleadings and evidence the question made is one of the construction of this lease; and the difference in the contentions of the respective parties is, in substance, whether by the provisions of the lease the $150 location-money was to be paid for each and all wells at any time located upon the leased premises? or, whether it was to be paid only upon the first four wells so located?

Plaintiff by his counsel, claims and urges that this location-money should be paid for

each and every well so located, without reference to the time when located or as to whether the wells were producers or non-producers of oil.

On behalf of defendant, it is claimed that the payment of the $150 location-money was to be made on the first four wells drilled, only, and that the plaintiff having been paid by the assignees of the lease holding before the assignment to defendant, it—defendant—took the lease free from payment of location-money for any wells which it might thereafter locate or drill. Counsel for defendant, concedes that the defendant, here, holding as assignee of John H. Wichman, stands in his shoes and that whatever rights or obligations would apply as between the original lessor and lessee if no assignment had been made, applies as between these parties. He concedes that the grant under the lease gave the right to drill and operate wells and construct machinery without limit as to the number of wells, and for a consideration of a royalty of one-sixth of all the oil produced in all the wells, and that it was for the interest of the lessor to have all the oil produced possible. But defendant's counsel bases his argument that the lessee would not be and that this defendant is not liable for any wells located or drilled other than the first four, largely upon the fact shown by the original lease, in evidence, that it is made upon a printed blank, and that the part and the only part relating to the payment of the location-money is wholly in writing and a part of a clause following which is inserted in a blank space in the printed form of the lease;" a second well to be drilled within four months, a third well within eight months, and a fourth well within twelve months, from date of lease, second party to pay one hundred and fifty ($150) dollars, for each location when location is made, wells to be located by both parties; if wells are not drilled as stated, second party only to hold 15 acres for each well so drilled, second party is also to protect the lines, steam lines to be laid North. South, East and West." And it is urged that this clause being wholly in writing, must be taken as conclusive of the intention of the original parties to the lease. That being the only place in the lease where any provision is made for the payment of location-money; that the lease without this provision being complete, providing a consideration in the way of one-sixth royalty on all the oil produced, it follows that the lessee is only bound to pay the location-money on the first four wells and as to all the after-drilled wells the lessor must look to the royalty alone for his compensation, and it appearing that these four wells had been located, drilled and paid for before the assignment to defendant, that it is not required to make any payment on that account for any after-drilled wells.

It is further urged that this provision is a part of the clause in reference to the forfeiture of rights of the lessee, and that it would be unreasonable to so construe the lease as to provide that the payment for four wells, of $600, should hold the lease good for all time and for any number of wells as to sixty of the ninety acres and at the same time to require payment on an unlimited number of wells for the right to drill upon the remaining thirty acres.

An examination of the original lease shows that this written portion already quoted, must be read in immediate connection with the sentence next preceding that quoted. This is a part of the printed form, except as to the words "sixty days" inserted in the blank and reads as follows: "In case no well is completed within sixty days from this date, then this grant shall become null and void," and immediately following those words, but erased in the printed blank, is this: "Unless second party shall pay to said first party————dollars for each year thereafter, such completion is delayed."

Attention is also called to the connection and punctuation of the written parts as having controlling weight in the construction as between the original parties, the Wichman's—father and son.

The rules of construction as between the parts of an instrument partly written and partly printed, as well as the rules of construction applying to contracts in writing generally, are elementary and well understood. The entire contract is to be construed together, giving effect to all parts of the same, printed and written, where they can be reasonably construed together, and unless there is a conflict between the printed and written matter. Where there is such conflict, so that the two cannot stand together upon a reasonable construction, then the written part must control. This is stated as an elementary principle by McIlvaine, J., in the course of his opinion in 25 Ohio St., p. 46, in construing an insurance policy, in which he,—referring to the policy there in question—uses this language:

"The form of the policy, as printed, assumes to insure against the perils of seas, lakes, rivers, etc. ; but the contract of the parties, as evidenced by the terms therein written, which must control in its construction, clearly shows that the only risk assumed by the under-writer was loss by fire ; and that the perils by rivers, etc., including collisions, were not insured against at all as proximate causes of loss or damage.

But from a careful examination of this lease and of all its parts, and a reading and re reading of both the original as partly printed and partly written and of the copy as written, I am unable to find any conflict between the several provisions of this lease. I cannot see why all the provisions cannot stand together and receive reasonable construction as a whole. It is not artificially drawn and there is no reliable punctuation. There is no evidence as to who filled out the blanks, but as done, the sentences are disjointed and the language subject to grammatical criticism, and yet I see no reason why it is not the duty of the court to construe it together and to give effect to every

provision in it. When this is done I see no ambiguity, no difficulty in applying the language used to the subject-matter—unless it be as to one provision therein hereinafter noticed. I find no necessity for any aid from oral testimony or through extrinsic evidence in construing it so as to show from its terms the evident intention of the parties to it so far as it relates to the payment of this location-money.

Reading the contract itself, alone, so far as relates to its provisions as to oil or oil wells, I am of the opinion that the clear intention of the parties to it, gathered from a fair construction of all its language, may be stated as follows:

1. Provision for an ordinary lease of a certain ninety acres of land for oil and gas purposes, on a royalty of one-sixth of the oil produced.

2. That four wells should be drilled; one in sixty days and one each in four, eight and twelve months from the date of the lease, respectively.

3. If the four wells should not be so drilled then that the lease should become void as to all the premises except as to fif teen acres for each well drilled—that is, if one was so drilled, then fifteen acres only should be held and the lease should be void as to the remainder of the premises; and, in the same way, if two wells, then thirty acres; and if three wells, forty-five acres should be held and be void as as to the remainder; but if four wells should be so drilled, within the time named, then the lease to be held good as to the entire ninety acres.

4. That one hundred and fifty dollars should be paid by the lessee for each location when such location should be made and without limit as to the number of wells so located, and also without reference as to whether the wells located should be pro ducers or non producers of oil.

5. The wells to be located by both par ties, but no well to be nearer than three hundred feet of the house or barns of the lessor, nor to occupy more than one acre of land.

6. Oil lines to be buried below plow-depth, and steam lines to be run North and South, East and West. "Second party is also to protect the lines," and the lessee to have the right to use sufficient gas, oil and water to operate all wells, with right of re moval as to all machinery, and all this with out limit as to number or location of wells.

This above-quoted provision in reference to protecting the lines, may contain a latent ambiguity—such a one as might be the subject of evidence. No evidence has been introduced to aid in its construction. The only lines named in the lease are "oil lines" and "steam lines." But it is argued by plaintiff's counsel, that, applying this.lan guage as to the oil lines, under the prin ciples announced in the decision of Judge Johnson, in 1 Nisi Prius Reports, p. 132, and of the Circuit Court in the Kelly case, 9 C. C., 511, it should be held, without

other evidence, to apply to the protection of the boundary lines of the leased premises against oil or gas being drawn by wells drilled on adjoining premises. I do not think it necessary for me in this case to de termine as to the correctness of this proposi tion it might be necessary to do so in de ciding some other controversy under this lease. but is not important now.

In my view of the proper construction to be given to this lease, so far as the ques tion here involved is concerned, and upon consideration of its expressed terms and conditions, I do not need, as I think, to con sider either this or some of the other various reasons urged in argument by counsel for plaintiff in support of the claim made by them in this connection. I do not see any thing in the evidence given, outside of the contract itself, controlling the construction that I have given it as to this, nor that any further evidence is required, or, perhaps permissible, to determine the question at issue in this case, and I am of the opinion, that for the nine wells located and drilled by the defendant, it is liable for the one hun dred and fifty dollars for each. There is, as I read this contract, nothing in the lease providing that the payment of this location money is dependent upon the production of oil by any well, and nothing requiring the lessees to pay location-money on any well previously located or drilled. It follows, in my opinion, that plaintiff is entitled to re cover for the nine wells and not for the tenth.

### III.

### Findings by the Court.

Having been requested by counsel for de fendant to state my Findings of Fact and Law separately, I find as follows:

#### Findings of Fact.

1. That the lease, a copy of which is at tached to the petition, was executed at the date therein named, by John F. Wichman, the plaintiff herein, as party of the first part, and by John H. Wichman, as party of the second part, and that said parties were father and son, and, by assignment by said John H. Wichman, came through a direct line of assignees to the defendant, The Fort Orange Oil Company, which became the owner and holder of said lease August 1st. 1894.

2. After the defendant company received such assignment and before the commence ment of this action, it located and drilled upon the premises described in the lease and in the petition, nine oil wells: one of which produced no oil; three of which were light producers, but were operated for a short time only and five of which were fair produces and have ever since been operated regularly by the defendant as such. The de fendant company has also cleaned out and operated one old well drilled upon the said premises by another company before the ex ecution of said lease.

3. I find from the pleadings and the ad missions of counsel—by reason of which no

evidence was required or given on the subject—that four wells had been located and drilled by other assignees and holders of this lease prior to the assignment of the same to defendant company, and that plaintiff had been paid by such prior holders, the location-money on each and all of said four wells.

4. That the defendant company had never paid the $150 location-money, or any part of the same, for either of the nine wells so located and drilled by it; nor for the one old well which it had cleaned out and operated, but has at all times denied its liability for and refused to pay any part of the same.

5. That there was, before the commencement of this action, discussion at one or more times, between the plaintiff and the manager of the defendant company, in which plaintiff claimed that defendant company was liable for the location-money on wells drilled by it, but the defendant company, through its manager, denied any such liability. The evidence does not, however, show the date when any demand was made by the plaintiff for said payment, nor the date at which said wells, or any of them, were located or drilled by defendant—further than that the same was done after the assignment of the lease to defendant and before the commencement of this action.

### Findings of Law.

And I find the following as Conclusions of Law:

1. That the defendant company is liable to the plaintiff in this action for the payment of the sum of one hundred and fifty dollars, as provided in the lease, to be paid upon the location of each of the nine wells so located and drilled by it upon said leased premises, without reference to the fact whether any oil was produced by said wells or either of them.

2. That the defendant company is not liable for any payment of location-money for the one well cleaned out and operated by it, but which was located and drilled before the execution of said lease.

3. That plaintiff is entitled to recover interest upon the amount so due upon the nine wells, from and after—and not before —the commencement of this action.